IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Cr. No. 09-2968 RB |
| ) | |
| **NATHAN ARCHULETA** ) | |
| (a/k/a "Enemy"), ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION AND ORDER**

THIS MATTER came before the Court on Defendant Nathan Archuleta's Request for a *James* Hearing and Motion in Limine to Preclude the Admission of Alleged Co-Conspirator Statements Absent a Pretrial Showing Under Federal Rule of Evidence 801(d)(2)(E). (Doc. 184). Having fully considered the parties' filings and the evidence and arguments presented at the *James* hearing, the Court hereby grants in part and denies in part Defendant's motion.

**I.       PROCEDURAL & FACTUAL BACKGROUND**

This case stems from an alleged conspiracy by Defendant and several co-conspirators to smuggle methamphetamine from Mexico into the United States in women's vaginal tracts. Defendant was indicted in a Second Superseding Indictment (Doc. 168), along with alleged co-conspirator Daniel Muñoz, on March 10, 2010, which was superseded by a Third Superseding Indictment (Doc. 233) on July 22, 2010, charging Defendant with the following counts:

Count 1: 21 U.S.C. § 846: Conspiracy to possess with intent to distribute 50
grams or more of methamphetamine, beginning on or about July 2, 2009 and
continuing to on or about July 3, 2009.
Count 2: 21 U.S.C. §§ 841(a)(1) and (b)(1)(A): Possession with Intent to

      Distribute 50 Grams and More of Methamphetamine on or about July 2, 2009; 18 U.S.C. § 2: Aiding and Abetting.
      Count 4: 21 U.S.C. § 846: Conspiracy to possess with intent to distribute 50 grams or more of methamphetamine, beginning on or about June 1, 2009, and continuing to on or about November 5, 2009.
      Count 5: 18 U.S.C. §§ 922(g)(1) and 924(a)(2): Felon in Possession of a Firearm and Ammunition, on or about November 5, 2009.
      Count 6: 18 U.S.C. § 924(c)(1)(A)(I): Carrying a Firearm During and in Relation to a Drug Trafficking Crime and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, on or about November 5, 2009.
      Count 7: 21 U.S.C. § 844(a): Possession of Methamphetamine, on or about November 5, 2009.

At trial, the government plans to introduce statements from several of Defendant's co-conspirators to demonstrate Mr. Archuleta's participation and role in the alleged conspiracy. Specifically, the government intends to introduce the following statements, whose admissibility the Court must consider:

1. On July 2, 2009, while trying to convince Amy and Betty[1] to smuggle methamphetamine in their vaginal tracts, Muñoz and/or Archuleta joked that, "if a girl can't take this much (gesturing with their hands to indicate a cylindrical object about six inches long) then they can't take me."

2. On July 2, 2009, Muñoz told Amy and Betty to clean out Charlie's[2] car and he gave them $20 to accomplish that task and gas up the car. Muñoz also asked his girlfriend, Angela, to show Amy and Betty how to get on the highway to drive to Deming. Angela accompanied Amy and Betty to a gas station in Las Cruces and then showed them how to get on Interstate 10 headed west.

3. On July 2, 2009, while Amy and Betty were on their way to Palomas, Mexico, Muñoz called them and told them to turn around and pick up David[3]

---

1. Amy and Betty are pseudonyms used by the government in order to avoid unnecessarily identifying witnesses. Amy and Betty allegedly conspired with Defendant Nathan Archuleta to smuggle methamphetamine from Mexico into the United States in their vaginal tracks. They were stopped by Border Patrol when attempting to re-enter the United States on July 2, 2009.

2. Charlie is another pseudonym used by the government. Charlie was Betty's sister, and he allegedly conspired with Defendant to bring methamphetamine into the United States by lending his car and cell phone for the smuggling operation.

3. David is another pseudonym. He allegedly conspired with Defendant to bring methamphetamine into the United States by serving as an escort and guide in Mexico for the two girls during the smuggling operation.

        behind the movie theater in Deming.

4.     On July 2, 2009, while Amy and Betty were on their way to Palomas, Mexico, they had a phone conversation with Muñoz in which they told him they were scared and did not want to continue. Muñoz cursed at them and then told them to come back. They could tell by his language and the tone of his voice that he was angry, and they agreed to continue with the trip because they were afraid of what Muñoz would do if they failed.

5.     On July 2, 2009, Muñoz called David on David's sister's cellular phone and told David that he had another job for him in Palomas and that he should meet up with two women at the movie theater in Deming.

6.     On July 2, 2009, David told Amy and Betty where to drive once they were in Palomas, Mexico. Once at the house in Palomas, David told Amy and Betty that he could not make the packages of methamphetamine any smaller and they had to take the packages that he gave them. David gave Amy and Betty passport stamps to use at the Port of Entry and he told Amy and Betty that if they were questioned at the Port of Entry, Betty should say that she is David's girlfriend.

7.     On July 2, 2009, Archuleta and Muñoz together sent or received the following text messages to or from Betty and Amy using Charlie's phone:

| DATE & TIME | TYPE | TO/FROM | TEXT |
|---|---|---|---|
| 7/2/2009, 7:06 p.m. | Outgoing | To Spooks From Amy & Betty | Still full |
| 7/2/2009, 7:22 p.m. | Outgoing | To Spooks From Amy & Betty | Ten miles |
| 7/2/2009, 7:36 p.m. | Outgoing | To Spooks From Amy & Betty | ya |
| 7/2/2009, 7:39 p.m. | Outgoing | To Spooks From Amy & Betty | Going to Denim |
| 7/2/2009, 7:40 p.m. | Outgoing | To Spooks From Amy & Betty | yeah its fool im stop texting her phone diem |
| 7/2/2009, 8:12 p.m. | Outgoing | To Spooks From Amy & Betty | on our way to mexico but in this car |

| DATE & TIME | TYPE | TO/FROM | TEXT |
|---|---|---|---|
| 7/2/2009, 8:19 p.m. | Outgoing | To Spooks From Amy & Betty | were going |
| 7/2/2009, 8:23 p.m. | Outgoing | To Spooks From Amy & Betty | ya |
| 7/2/2009, 8:26 p.m. | Outgoing | To Spooks From Amy & Betty | Ok |
| 7/2/2009, 8:52 p.m. | Outgoing | To Spooks From Amy & Betty | Just got here |
| 7/2/2009, 8:56 p.m. | Outgoing | To Spooks From Amy & Betty | Mexico at the house |
| 7/2/2009, 9:54 p.m. | Outgoing | To Spooks From Amy & Betty | Leaving the house |
| 7/2/2009, 9:57 p.m. | Outgoing | To Spooks From Amy & Betty | we are leaving now |
| 7/2/2009, 10:01 p.m. | Incoming | To Amy & Betty From Spooks | Text me when you get over T SPOOKY F |
| 7/2/2009, 10:15 p.m. | Incoming | To Amy & Betty From Spooks | were you at T SPOOKY F |
| 7/2/2009, 10:36 p.m. | Outgoing | To Spooks From Amy & Betty | Just left border check they made us get out but were good |
| 7/2/2009, 10:37 p.m. | Incoming | To Amy & Betty From Spooks | K hurry up T SPOOKY F |
| 7/2/2009, 11:01 p.m. | Incoming | To Amy & Betty From Spooks | were u fools at fuck T SPOOKY F |
| 7/2/2009, 11:32 p.m. | Incoming | To Amy & Betty From Unknown | where u guys at BEAUTIFUL LADY |

| DATE & TIME | TYPE | TO/FROM | TEXT |
|---|---|---|---|
| 7/2/2009, 11:46 p.m. | Incoming | To Amy & Betty From Spooks | u guys good T SPOOKY F |
| 7/3/2009, 12:06 a.m. | Incoming | To Amy & Betty From Unknown | where you at |

8. After Amy and Betty were arrested on July 2, 2009, on several occasions, Muñoz apologized to Charlie for getting Charlie's sister involved. Muñoz told Charlie that Archuleta had told him, Muñoz, that Amy and Betty were just work horses and that if he would have known that Betty was Charlie's sister he would never have used her.

9. On July 3, 2009, Muñoz went to Edith's[4] Las Cruces apartment and told her that she needed to do a job for him. Muñoz asked Edith her phone number and then entered it into his phone. Muñoz then called an unknown number and said, "we have the girl."

10. On July 3, 2009, Edith was in a house in Palomas, Mexico with an elderly woman. The woman showed Edith a gun and said to her, "you do what you have to do and I do what I have to do."

Defendant requests that the Court find these statements inadmissible under Federal Rule of Evidence 801(d)(2)(E).

## II.   ANALYSIS

Under Federal Rule of Evidence 801(d)(2)(E), in order for a co-conspirator's statement to be admissible at trial, the government must establish by a preponderance of the evidence that: (1) the conspiracy existed; (2) the defendant and the declarant were members of the conspiracy; and (3) the statement was made during the course and in furtherance of the conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987); *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995). In making this determination, "[t]he contents of the statement shall be considered but are *not alone*

---

4. Edith is another pseudonym. She was allegedly ordered at gunpoint by Mr. Muñoz on July 3, 2009 to go to Palomas, Mexico and to pick up a load of methamphetamine for him.

*sufficient* to establish . . . the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered . . . ." FED. R. EVID. 801(d)(2)(E) (emphasis added). "The court must consider in addition the circumstances surrounding the statement, such as the identity of the speaker, the context in which the statement was made, or evidence corroborating the contents of the statement . . . ." FED. R. EVID. 801, 1997 advisory comm. notes; *see also United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1242 (10th Cir. 1996) ("court may consider the hearsay statement sought to be admitted, along with independent evidence tending to establish the conspiracy"); *United States v. Hernandez*, 829 F.2d 988, 993 (10th Cir. 1987) (finding that after the Supreme Court's decision in *Bourjaily*, "the court may now look to the co-conspirator statements themselves as at least a partial basis for the findings necessary to admit the statements into evidence"); *United States v. Martinez*, 825 F.2d 1451, 1453 (10th Cir. 1987) ("there need only be some independent evidence linking the defendant to the conspiracy"). This evidence may come from just about any source, provided it is not subject to privilege, including co-conspirator statements or a summary of the evidence by officers. *Owens*, 70 F.3d at 1124–25. Furthermore, the evidence need not be admissible at trial and may itself be hearsay. *Id*. at 1124. The Court may make these factual determinations regarding the conspiracy by holding a *James* hearing outside the presence of the jury, as the Court did in the case at hand. *Owens*, 70 F.3d at 1123. The Tenth Circuit has a "strong preference" for a *James* hearing. *United States v. Urena*, 27 F.3d 1487, 1491 (10th Cir. 1994).

To prove a drug conspiracy, the government must establish: "(1) an agreement with another person to violate the law, (2) knowledge of the essential objectives of the conspiracy, (3) knowing and voluntary involvement, and (4) interdependence among the alleged conspirators." *United States v. Scull*, 321 F.3d 1270, 1282 (10th Cir. 2003) (internal quotations omitted). At the *James* hearing,

6

the government presented the testimony of Special Agent Roy Vazquez, the case agent in this matter, who summarized the government's evidence in this case. Based on Agent Vazquez' testimony (Doc. 248), the Court finds by a preponderance of the evidence that a conspiracy existed between Defendant Archuleta, Mr. Daniel Muñoz, Charlie, David, Amy, and Betty to import methamphetamine from Mexico into the United States using the women's vaginal tracts on July 2, 2009. At this time, however, the Court does not find that a conspiracy existed between Defendant Archuleta and Mr. Daniel Muñoz to import methamphetamine into the United States on July 3, 2009. When asked on cross-examination, "Do you have any evidence that Mr. Archuleta was involved in the conspiracy involving the July 3rd transfer of methamphetamine?" (Doc. 248 at 26:18–21), Agent Vazquez responded, "Not at this time." (Doc. 248 at 26:22.)

The government argues that Mr. Archuleta should be held "responsible for all the acts foreseeable as part of the conspiracy." (Doc. 248 at 48:20–21.) While it is true that "[d]uring the existence of a conspiracy, each member of the conspiracy is legally responsible for the crimes of fellow conspirators," *United States v. Russell*, 963 F.2d 1320, 1322 (10th Cir.1992), it is also true that a conspirator "is only liable for the acts of co-conspirators 'until the conspiracy accomplished its goals or that conspirator withdraws.' " *United States v. Cherry*, 217 F.3d 811 (10th Cir. 2000) (quoting *United States v. Brewer*, 983 F.2d 181, 185 (10th Cir.1993)). Stated another way, "conspirators are responsible for crimes committed 'within the scope of the unlawful project.' " *United States v. Russell*, 963 F.2d 1320, 1322 (10th Cir.1992) (quoting *Pinkerton v. United States*, 328 U.S. 640, 646–48 (1946). Thus, whether the conspiracy had ended depends on the scale and complexity of the conspiracy: if the conspiracy was limited in scope and only involved Defendant, Amy, Betty, Charlie, and Muñoz, then the conspiracy ended when Amy and Betty were taken into custody; however, if this was a large, complex criminal enterprise to import drugs, then the

conspiracy continued on July 3, 2009. *See, e.g.*, *United States v. Williams*, 897 F.2d 1034, 1040 (10th Cir. 1990); *United States v. Record*, 873 F.2d 1363, 1368 (10th Cir.1989) (finding participant in initial drug deal remained part of continuing conspiracy); *United States v. Brewer*, 630 F.2d 795, 800 (10th Cir.1980) (finding fact that some participants joined or left the scheme irrelevant if each knew of the larger conspiracy).

At the *James* hearing, Agent Vazquez described Defendant Archuleta's role in the conspiracy as having "recruited the two females for the smuggling attempt" and "talked [Charlie] into using his car." (Doc. 248 at 6:11–17.)  There was no mention by Agent Vazquez of any conspiracy involving Defendant and Mr. Muñoz, or anyone else, beyond the July 2, 2009 conspiracy that was planned at Muñoz' Las Cruces apartment.  Accordingly, based upon the evidence presented at the *James* hearing, the Court finds that Statements 9 and 10—made by alleged co-conspirators to Edith on July 3, 2009—are beyond the scope of the drug conspiracy in which Mr. Archuleta participated, and they are therefore inadmissible under Federal Rule of Evidence 801(d)(2)(E).

Next, the Court finds that several of the text messages listed in Statement 7 are inadmissible as not made in the course or furtherance of the conspiracy or by a member of the conspiracy.  First, there are two texts from an unknown number—one at 11:32 p.m. on July 2, 2009, and the second at 12:06 a.m. on July 3, 2009.  Agent Vazquez indicated at the *James* hearing that he was unable to identify who sent these texts. (Doc. 248 at 34:22–35:1.)  As the government has failed to show that the declarant (the person sending the texts) was a member of the conspiracy or that the statement was made during the course of and in furtherance of the conspiracy, these texts must be excluded.

Additionally, at some point, the girls were detained by border patrol agents, who seized Amy's cell phone.  Agent Vazquez indicated that Amy, Betty, and David pulled into the border checkpoint and were apprehended at approximately 11:45 p.m on July 2, 2009. (Doc. 248 at

35:17–18.) At 10:36 p.m., however, the girls sent the following message: "Just left border check, they made us get out, but were good." The Court is confused by this statement, as it indicates that they had successfully passed the border checkpoint, but this was clearly a fallacy. Agent Vazquez indicated that there may have been some problems with the time stamp when the text messages were extracted from Amy's phone. (Doc. 248 at 18:18–19:3.) Accordingly, it appears that Amy, Betty, and David may have been seized at this point, and that this text message was not made by them, or was not made within the course of the conspiracy. *See United States v. Melton*, 131 F.3d 1400, 1405 (10th Cir. 1997) ("arrest may under certain circumstances amount to a withdrawal"); *United States v. Brown*, No. 96-3371, 1997 WL 589180, at *1 (10th Cir. Sept. 24, 1997) (finding that an arrest plus agreement to cooperate with law enforcement officials constitutes withdrawal). Consequently, the Court finds that this text message is not admissible under Federal Rule of Evidence 801(d)(2)(E) because the government has failed to show by a preponderance of the evidence that it was made by a co-conspirator during the course of and in furtherance of the conspiracy.

Finally, Defendant objects to the admission of Statement 1 and all of the text messages because the government cannot prove whether they were made by Mr. Archuleta or Mr. Muñoz, as both of them were using the cell phone to communicate with Amy. (Doc. 248 at 27:23–28:19, 32:8–34:14, 45:4–18, 46:9–13.) The government responded, however, that whether Defendant Archuleta or Mr. Muñoz made the statements is irrelevant: if the statement was made by Mr. Muñoz, it is admissible under Federal Rule of Evidence 801(d)(2)(E) as a statement by a co-conspirator; however, if the statement was made by Defendant, it is admissible under Federal Rule of Evidence 801(d)(2)(A) as the party's own statement. Accordingly, the Court finds Statement 1 and the remaining text messages (excluding those discussed in the preceding paragraphs) are admissible.

### IV.     CONCLUSION

Having held a *James* hearing to determine the admissibility of the co-conspirator statements, the Court finds by a preponderance of the evidence that (1) a conspiracy existed on July 2, 2009 to smuggle methamphetamine into the United States using women's vaginal tracts; (2) Defendant Nathan Archuleta and the declarants (Amy, Betty, Charlie, and David) were members of the conspiracy; and (3) most of the statements introduced by the government were made during the course and in furtherance of the conspiracy.  The Court does not find, however, that Statements 9 and 10 were made during the course of the July 2, 2009 conspiracy, and therefore, they are excluded under Federal Rule of Evidence 801(d)(2)(E).  Additionally, the Court finds that three text messages with the following time stamps are excluded: July 2, 2009, 10:36 p.m.; July 2, 2009, 11:32 p.m.; and July 3, 2009, 12:06 a.m.  The government failed to show by a preponderance of the evidence that the text messages were made by a co-conspirator during the course of the conspiracy.

**WHEREFORE,**

**IT IS HEREBY ORDERED** that Defendant's Motion in Limine to Preclude the Admission of Alleged Co-Conspirator Statements (Doc. 184) is **GRANTED IN PART** and **DENIED IN PART**.

_____
**HON. ROBERT BRACK**
**UNITED STATES DISTRICT JUDGE**